JBKVLIUC

1  UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  UNITED STATES OF AMERICA,

4           v.                 19 CR 39 (JMF)

5  KENNY LIU,

6            Defendant.       CONFERENCE

7  ------------------------------x

8                         New York, N.Y.
                          November 20, 2019
9                         3:32 p.m.

10

11  Before:

12             HON. JESSE M. FURMAN,

                        District Judge
13

14              APPEARANCES

15

16  GEOFFREY S. BERMAN,
     United States Attorney for the
     Southern District of New York
17  ELIZABETH A. ESPINOSA
     Assistant United States Attorney
18
   MARC O. LITT
19  JASON L. LIBOU
     Attorneys for Defendant
20
   ALSO PRESENT:  ALFRED LWIN, Interpreter (Burmese)
21

22

23

24

25

JBKVLIUC

1          (Case called)

2          MS. ESPINOSA:  Good afternoon, your Honor.

3          Elizabeth Espinosa, for the government.

4          MR. LITT:  Good afternoon.

5          Marc Litt, along with Jason Libou, for Kenny Liu.

6          THE COURT:  Good afternoon to all of you.

7          And good to see you, Mr. Lit.

8          So we are here with a Burmese language interpreter,

9   Mr. Lwin, I think it is.

10          THE INTERPRETER:  Alfred Lwin, your Honor.

11          THE COURT:  Lwin.

12          THE INTERPRETER:  Yes.

13          THE COURT:  Good afternoon.

14          This is one of the issues that we're here to discuss,

15   but let me ask if Mr. Liu is able to understand the Burmese

16   language interpreter who's here with us today?

17          THE DEFENDANT:  I don't understand Burmese very well.

18          THE COURT:  Okay.  Well, that is one of the things

19   that we are here to discuss.

20          THE DEFENDANT:  I want you to speak slowly.  If you

21   speak fast, I cannot understand, because I mostly speak

22   Arakanese or Rakhine language.

23          THE COURT:  All right.  Well, as I said, this is part

24   of what we are here to discuss.

25          As I indicated, we had a telephone conference last

1   week with just counsel.  I'm a little mystified here, because

2   there had not been any prior indication that Mr. Liu had any

3   trouble understanding.  And a look back at the record of this

4   case at the conference before me on July 22nd, where Mr. Lwin

5   was present and interpreting in Burmese, Mr. Liu indicated not

6   once, but twice -- because there was a delay and we had to

7   reconvene -- that he understood and, indeed, answered in

8   English that he understood.  And at no point in that proceeding

9   did he give any indication that he did not understand the

10  Burmese language interpreter or have any trouble.

11          I would note as well that there is in the transcript

12  of the arraignment before Magistrate Judge Moses on July 2nd of

13  this year, she made a note that there was a Cantonese

14  interpreter present, and asked if Mr. Liu could understand and

15  follow the proceedings through the Cantonese interpreter.  And

16  Mr. Liu indicated that he could.  And there does not appear any

17  indication or record in that transcript that he had any trouble

18  understanding thereafter.

19          And finally, I would note or reiterate that Mr. Liu

20  obviously was an employee of the United States Postal Service,

21  as I understand it, until he was arrested at least.  And it

22  seems a little improbable to me that he would have so little

23  facility in English or other readily available languages that

24  he would be able to maintain that job, but maybe that

25  assumption is wrong.

1    THE DEFENDANT:  Although I work at the office, but my

2    English is not that great.  I don't understand English very

3    well.

4    THE COURT:  All right.  In any event --

5    MR. LITT:  Could I be heard, your Honor?

6    THE COURT:  Yes.

7    MR. LITT:  So I'm going to address some issues, and

8    perhaps this can be done under seal.

9    There are family members here, but I don't think there

10   are any members of the public.  This somewhat relates to the

11   letter that we previously filed which is under seal.

12   THE COURT:  Can you just move the microphone a little

13   closer.  In part for the interpreter's benefit, just talk as

14   slowly as you can.

15   MR. LITT:  Sure.

16   THE COURT:  All right.

17   MR. LITT:  So Mr. Liu has been tested by our expert.

18   And he has cognitive issues.  We have made Mr. Liu available to

19   the government's expert.  As I understand it, the government's

20   expert has not issued a report, but has made some preliminary

21   comments to the government about what she found in the course

22   of her evaluation.

23   My best understanding is Mr. Liu does understand at

24   different -- to different degrees, parts of four languages.

25   His primary language is a dialect of Burmese called Rakhine.

And as I understand it, Rakhine is very similar to Burmese, and

uses the same words for most things, I think, but the

pronunciation is different.  He is most comfortable conversing

in Rakhine.  And Rakhine gives him the best opportunity, given

the limitations that he has, to fully comprehend what's going

on.  He understands some Cantonese and he understands some

English.

        The testing and my interactions with him show that --

and using different interpreters, that he may seize on a word

that he knows and think he understands what's going on.  And I

think, in part, that is how he has navigated the world, the

English-speaking world in the United States.

        As far as his job in the post office, his route for 24

years was in Chinatown.  And I don't think -- I think his

supervisors at work also did not converse with him in English.

So his work experience involved using bits and pieces mainly of

Cantonese.

        But the nature of the interactions that he had to have

in that job were relatively simple.  When it comes to a

discussion -- well, first of all, the testing shows that he has

difficulty with complex ideas, abstract thinking, and the like.

When it comes to talking about things such as those that are at

issue in this case, given that this is a criminal proceeding,

it is my judgment that Rakhine is the language and it's

consistent with things that he has said.  Rakhine gives him the

1      best chance at understanding what's going on.

2              And if I can address the issue of his not raising an

3      objection previously.  That's something that also showed up

4      when our expert tested him, that whether it's a cultural issue,

5      a coping or adaptive mechanism, or a desire not to raise issues

6      and to, sort of, go along, that seems to be the way he

7      proceeds.

8              So it's not a game that's being played about language

9      and his capacity to understand.  Rakhine is the language that

10     gives him the best chance of understanding what's going on.

11             THE COURT:  Okay.  So I think I indicated last week on

12     the telephone that my understanding was that the interpreter's

13     office here doesn't have a Rakhine or Arakanese -- those are

14     the same thing, I take it?

15             MR. LITT:  I believe so, yes.

16             THE COURT:  Doesn't have an Arakanese interpreter on

17     staff or even on contract.  I haven't fully nailed down what

18     the options are on that front yet, but I will continue to do so

19     if that is indeed the language that we need to procure here.

20             I guess, more broadly, your letter of October 11th

21     suggested that -- well, and you intimated that you had Mr. Liu

22     evaluated and raised issues in that regard.  Where does that

23     stand and what's your proposal or suggestion for that?

24             MR. LITT:  I've been talking to Ms. Espinosa.  And

25     what we would like to do is we would like to make a submission

1    to the U.S. Attorney's Office.  We plan to do that by December

2    20th.  Part of what that will address are the issues squarely

3    raised by our expert report.  We are looking for a way to

4    resolve this case without the need to engage in what would be

5    complex and time-consuming and difficult motion practice.  The

6    government can't -- and I wouldn't expect them to -- make any

7    promise about the viability or the likelihood of our success in

8    that endeavor.  But I think the government would agree that

9    this is not a frivolous application that we intend to make, and

10   it's a serious one, and I expect the U.S. Attorney's Office to

11   consider it seriously.

12        So what I would propose is that we be given the time

13   to do that, the U.S. Attorney's Office to consider and come to

14   a conclusion.  If we are able to resolve this case without the

15   need for motion practice, there won't be as much of a need

16   either to set a schedule today for motions or to resolve this

17   interpretation/interpreter question.  And I would think by the

18   middle of January we should know from the U.S. Attorney's

19   Office where this case is going to go.

20        THE COURT:  So one question for you, and then I'll

21   hear from Ms. Espinosa.  Why can't you make that application to

22   the U.S. Attorney's Office sooner than December 20th?  That's

23   more than a month away or is a month away.

24        MR. LITT:  It's a month away.  Well, we want to put

25   together the best application we can that addresses complex

1  points.  We also will need to work with our client.  Everything

2  takes a bit longer.  We have a Rakhine interpreter who is

3  sometimes available, but we have a time constraint based on

4  that.  And it takes time to work through complex issues with

5  our client.  And so we are not trying to unduly delay.

6       I also understand that Ms. Espinosa may have a trial

7  schedule coming up which would interfere with her ability to

8  consider and do what she has to do in connection with that.

9  And so I think it's a reasonable amount of time in light of all

10  of the circumstances.

11       THE COURT:  And can you remind me, I would have

12  thought that the motion deadline for Mr. Liu had passed.  Is

13  that not wrong?

14       MR. LITT:  No, I think --

15       THE COURT:  I think it was set for October 4th, and

16  then there was a three-week extension granted, making it

17  October 25th.  And I denied an application on September 25th

18  for an extension beyond that.

19       MR. LITT:  No, but that -- I think by our sealed

20  letter that we filed I believe addressed that.  And that's why

21  we were going to be back to talk about scheduling.  Additional

22  time was sought so that we could have our expert and the

23  government's expert and for us to confer.

24       THE COURT:  Fair enough.  I think I just overlooked

25  that portion of the record.

1    All right.  I'll hear from Ms. Espinosa.  But I guess

2    my concern is the following:  We have a trial date.  There is

3    another defendant in the case remaining, if I remember

4    correctly.  Ms. Espinosa; is that correct?

5         MS. ESPINOSA:  That is correct, your Honor.

6         However, I'm not in a position right now to know for

7    sure whether that defendant is planning to proceed to trial.

8    But I think it is not unlikely that it will not, but, of

9    course, I'm not in a position to really comment on that at the

10   moment.

11        I've been in discussions with Mr. Litt about this, as

12   he said.  Given the nature of the application that he intends

13   to provide to us, which we will, of course, consider very

14   seriously and, as he said, we can't make promises, but we will

15   consider this very seriously and determine the appropriate,

16   from our perspective, steps to take, we don't object to the

17   proposed schedule which I realize does create some challenges

18   with the current trial date in this case.

19        It appears that that trial date -- and, of course, we

20   should discuss this further, or we're available at your Honor's

21   convenience, of course.  But given the nature of the

22   application and, in the alternative, any motions that defense

23   counsel may make here, I expect that may take some time as

24   well.

25        THE COURT:  And the motions, are we contemplating a

1  motion under Rule 12.2(b)?  Is that what kind of motion we're

2  talking about or what are we talking about?

3         MR. LITT:  Well, there could be a motion on

4  competency.  There could be a motion -- there will definitely

5  be a motion on suppression of the statements.  And there's a

6  knowing voluntary waiver of *Miranda*.  And it would require

7  expert testimony and some additional testing.

8         The testing that we had done was sort of basic

9  cognitive.  There is a little bit more that would have to be

10  done on *Miranda* by both parties.  I don't think that would take

11  especially long.  But, again, we were trying to do this in the

12  most streamlined way possible and not do things that didn't

13  need to be done.  And if the case could be resolved without the

14  need for that testing and without the need for motions, that's

15  the way we want to proceed.  And we think there's a compelling

16  case to be made for that.

17         THE COURT:  All right.

18         So, Ms. Espinosa, what's your thought?

19         My concern -- feeling a little burned on this front at

20  the moment, I had a separate case that was indicted in May of

21  2018 where it wasn't until September, two months shy of a trial

22  date, that defense counsel first raised issues of competency,

23  after having made an application to the U.S. Attorney's Office

24  unsuccessfully for mitigation.

25         We then went through a lengthy competency process that

1  resulted in me finding him competent in May. And I set a trial

2  date of December. And two weeks ago, the defense sought an

3  adjournment on the grounds that they need to explore a defense

4  under Rule 12.2. And despite my severe misgivings about it, I

5  concluded that I had no choice, given the possible ineffective

6  assistance arguments that the defendant would make to put trial

7  off.

8        So that case has been pending for 18 months. And I

9  don't want this case to go down the same sort of path where we

10  have an application to the U.S. Attorney's Office, and if

11  that's unsuccessful, turn to competency. And that takes

12  however many months. And if that's unsuccessful, turn to

13  whatever other backup options there are. I think everybody

14  needs to be planning and preparing for these possibilities more

15  or less at the same time.

16        So with that, Ms. Espinosa, what are your thoughts?

17        MS. ESPINOSA: Your Honor, I certainly understand your

18  concerns. And we also don't wish this to drag on for 18

19  months. If it's feasible and your Honor wishes to set

20  simultaneous schedules, that is certainly an option. I think

21  that because -- based on my discussions with defense counsel --

22  and I'm happy to let him speak to this further -- I believe a

23  number of motions, because they would require additional

24  testing, I think the thought was that in the interest of

25  efficiency and resources, that it -- which I realize may not

1    necessarily align with the Court's resources, it would make

2    sense to take things one step at a time.  But that, of course,

3    does extend the schedule.

4         So the government is, of course, willing to be

5    flexible on this.  But balancing all of the interests, we also

6    wish to make sure that the defendant is able to explore these

7    issues to the extent it takes additional time.

8         THE COURT:  And correct me if you think I'm wrong, but

9    it seems to me that granting this really in any respect, short

10   of setting a motion deadline in December and short-circuiting

11   some of these other plans, would effectively require a

12   severance from the remaining defendant.

13        MS. ESPINOSA:  It certainly seems that the February

14   3rd trial date for this particular defendant would be nearly

15   impossible at this stage anyway.  If the competency or *Miranda*

16   waiver issues did not exist, I think then we could set a normal

17   motion schedule.  But because they do, it seems that it would

18   require that, yes.

19        THE COURT:  All right.

20        Mr. Litt, you, I assume, agree on that front?

21        MR. LITT:  Yes, your Honor.

22        THE COURT:  All right.

23        Well, it is what it is.  I certainly think that we

24   need to thoroughly explore these issues, it sounds like.  I

25   don't hear the government suggesting or arguing otherwise.

1    So I suppose I will sever Mr. Liu from the remaining

2  codefendant, keep the trial date as to that other defendant.

3  But that means that if this case is going to trial, it won't go

4  to trial on February 3rd.

5    In light of that, Ms. Espinosa, do you have any sense

6  of how long it would take the U.S. Attorney's Office to

7  consider any application that Mr. Litt makes?

8    MS. ESPINOSA:  Your Honor, I think we should be in a

9  position to give a decision by mid January.  In the event

10  that -- and I'm not in any way predicting the outcome now.  In

11  the event that any application is rejected at the initial

12  stage, there is an appeals process which takes slightly longer.

13  But we will certainly endeavor to get that done expeditiously.

14    So our goal would be mid January to have a decision

15  from the U.S. Attorney's Office.

16    THE COURT:  All right.

17    So here is what I propose:  I propose that the

18  defendant make an application to the U.S. Attorney's Office,

19  but do so earlier than December 20th; ideally by December,

20  let's say, 13th at the latest.  That seems eminently feasible

21  to me.  Maybe there's more to it than I know, but that seems

22  feasible and more likely to -- particularly with the holidays

23  looming, more likely to be acted upon in the time frame that

24  Ms. Espinosa just said.

25    What I would propose is that we set a date to come

1   back here, maybe January 23rd, to see where things stand.  If

2   between now and then things change and we should either

3   reconvene sooner or adjourn, then you can make an application

4   and we can adjust as needed.  But operating on the perhaps

5   optimistic assumption that the application to the U.S.

6   Attorney's Office, that process will run its course by mid

7   January, hopefully you'll be in a position if not to resolve

8   the case at that time, to at least discuss what the next steps

9   should be.  Does that make sense?

10          MS. ESPINOSA:  Yes, your Honor.

11          MR. LITT:  Yes.

12          I was just wondering, is the 24th available?  If not

13   the 20th, I'll make the 23rd work.

14          THE COURT:  So the 24th is not really available.

15          MR. LITT:  Okay.  The 23rd is fine.

16          THE COURT:  All right.  If that's okay, that will

17   definitely make my life a little easier.  So let's say 3:30 on

18   January 23rd.

19          Why don't we do this:  Ms. Espinosa, why don't you

20   submit a letter to me no later than the Tuesday of that week,

21   by the 21st, just filling me in on where things stand.  And

22   obviously that doesn't preclude an earlier letter if you think

23   that we should adjust the conference date ahead or back, but

24   certainly no later than the 21st you should submit a letter

25   indicating where things stand and what you propose the next

JBKVLIUC

1    steps should be.  All right?

2              MS. ESPINOSA:  Yes, your Honor.

3              THE COURT:  All right.

4              And I think in light of that, I will not set a motion

5    deadline now.  But assuming the case doesn't get resolved in

6    some fashion through this process, we will at the next

7    conference set a motion deadline.

8              I will encourage you to look -- or would encourage you

9    to look at Rule 12.2 and explore those issues.  Having learned

10   from experience, that motion deadline will be the deadline for

11   any notice under Rule 12.2, if the case is going forward.  So

12   you may want to look into that in advance of that conference as

13   well.

14             All right.  Time was already excluded through February

15   3rd, I believe, so assuming there's nothing we need to do on

16   that front.

17             MS. ESPINOSA:  I don't believe so, your Honor.

18             THE COURT:  Mr. Litt, anything further from you?

19             MR. LITT:  Just if we could have the portion of the

20   transcript that dealt with some of the testing issues placed

21   under seal so it's not publicly available.

22             THE COURT:  So I think what we should do, I'm prepared

23   to redact it, but a lot of the discussion didn't concern the

24   testing or the defendant's condition.  So why don't you go

25   through the -- speak with the court reporter -- and I can't

JBKVLIUC

1   remember what the process is, but if you speak with her, I'm

2   sure you can figure that out.  And then if you apply to me for

3   narrowly tailored redactions of those portions, I'm certainly

4   fine with that.

5           MR. LITT:  All right.  Appreciate that.

6           THE COURT:  Great.

7           Anything else, Ms. Espinosa?

8           MS. ESPINOSA:  No.  Thank you, your Honor.

9           THE COURT:  All right.  Then we are adjourned.

10          Thank you.

11                          *    *    *